# CHARLESTON.

TEBBETTS *v.* CHARLESTON.

33 705|
45 4:6|

Submitted January 22, 1890.   Decided March 22, 1890.

1. FORFEITED LAND—REDEMPTION—COMMISSIONER OF SCHOOL LANDS.

Where the commissioner of school lands is proceeding under the provisions of chapter 105 of the Code to obtain a decree for the sale of a lot of land located in a city or town which has been forfeited by failure of the owner to have the same entered upon the land-books of the proper county and charged with the taxes thereon, as provided by law, and the former owner thereof files his petition in said proceeding, praying that he may be allowed to redeem the same, as a condition precedent to such redemption such former owner must pay all costs, taxes and interest due thereon, as provided by law, including the municipal taxes, either to the commissioner of school lands or into court.

2. FORFEITED LANDS—TAXATION—COMMISSIONER OF SCHOOL LANDS—STATUTE OF LIMITATIONS.

Where such city files a petition in said proceeding, claiming an amount to be due to it for taxes on said lot, it will¦not be deemed thereby to have brought a suit for said amount of taxes, and the statute of limitations will not be applied to the taxes due thereon.

*W. S. Laidley* for appellant.

*Knight & Couch* for appellees.

ENGLISH, JUDGE :

On the 3d day of May, 1889, A. G. Tebbetts, commissioner of the school lands for Kanawha county, filed a petition in the Circuit Court of said county under section 5, c. 105, Code, and also in pursuance of the provisions of section 41, c. 31, of the same, against a lot situated in the city of Charleston, forfeited in the name of John P. Hale, praying that the same might be sold for the benefit of the school fund, alleging that said lot, forfeited in the name of John P. Hale, was dropped or omitted from the land-book of said county for the year 1875 ; that it was valued at $1,050.00, and has not been placed on said land-book in any name since that year, and that no taxes had been paid on

89

said lot since those charged for the year 1874, except those for the years 1875 and 1876, which were paid by virtue of decree in the suit of *Couch Commissioner* v. *Lands*, formerly owned by J. P. Hale; that said lot had not been returned delinquent, for the non-payment of the taxes charged thereon and sold therefor, for the year 1877, and the years since; and that, for five successive years since the year 1877, the said lot was not placed on the said land-book by the owner thereof, and charged with a state tax thereon, and that by reason of such failure to so place said lot on said land-book, and charge a state tax thereon, the said lot was forfeited, and the title thereto vested in the state; and setting forth a brief abstract of title, showing how A. L. & M. P. Ruffner derived the title to said lot under which they claim the right to redeem the same; and praying that said lot be sold for the benefit of the school fund, as required by law, and that said A. L. & M. P. Ruffner be summoned to show cause why the same should not be sold.

Said petition was referred to a commissioner in chancery, who was instructed to inquire into and report upon the matters and things therein contained, and particularly to inquire and report as to the amount of taxes and interest due and unpaid on said lot; in whose name it was forfeited, and when and how forfeited; in whom the legal title was at the time of the forfeiture; and, if more than one person claimed adverse title thereto at the date of the forfeiture, the name of each of said claimants, and a reference to the deed-book or books in which the title-papers of any claimant thereof can be found; what portion of said lot is claimed by any person or persons under the provisions of section 3, art. 13, of the Constitution of this state, with the names of such claimants, and the amount claimed by each, as far as said commissioner in chancery could ascertain the same but said commissioner was directed not to proceed to execute said decree until a summons should be served, as required by section 5, c. 105, Code.

Said commissioner, after giving the notice as required by law, reported to the Circuit Court of said county on the 27th day of June, 1889, that: " (1) The lot known as the 'Estill Lot,' and named in said petition, was forfeited in the name

of J. P. Hale, by reason of non-entry upon the land-books of Kanawha county after the year 1873. (2) The legal title thereto at the time of forfeiture was in said J. P. Hale. (3) There were no claimants adversely to the legal title at the time of said forfeiture. (4) No portion of said lot was claimed by any person or persons under the provisions of section 3, art. 13, of the constitution of the State. (5) The property was at the time of its forfeiture, as aforesaid, assessed at a valuation of $1,040.00, and that it nowhere appears that the taxes thereon were paid for the year 1872, or any year thereafter; and he ascertained the taxes from the year 1873 to 1888, inclusive, with twelve per cent. interest added, deducting, however, from said statement, the taxes for the years 1873 and 1874, and ascertained the balance due the State, *etc.*, for taxes, to be $383.50.

Said commissioner further reported that the city of Charleston, by its attorney, had filed a petition asserting its claim for taxes against said land and interest from the year 1875 to 1888, inclusive; the amount of taxes each year, at a valuation of $1,050.00, at $1.25 per $100.00, was equal to $13.12½; and that the whole claim asserted was $183.75; and that he disallowed all of said claim, except the taxes, for the past five years, ending with 1888, and interest, which aggregated the sum of $74.75.

To this report the city of Charleston excepted, so far as the same disallowed the claim of said city set up by its petition anterior to the five years ending with 1888, because there is no law which limits the claim of said city for taxes to five years; and A. L. & M. P. Ruffner excepted to so much of said report as ascertains any taxes due the city of Charleston in said proceeding, claiming that, if said city was entitled to any taxes on said lot, it could not collect them in said proceeding; that all the taxes collected in said proceeding were payable to the commissioner of school lands, who, after paying costs, pays the remainder to the sheriff and the treasurer; also because said commissioner allowed interest on city taxes.

On the 12th day of July, 1889, said cause was heard upon the report of said commissioner in chancery, and the exceptions indorsed thereon by the city of Charleston and A. L.

& M. P. Ruffner, and upon the petition of said A. L. & M. P. Ruffner, praying that they might be permitted to redeem said lot forfeited in the name of John P. Hale by the payment of the taxes charged and chargeable thereon, together with the interest thereon, and their proper proportion of costs to sell the same; on consideration whereof the court overruled the exceptions of said city of Charleston, and sustained the exceptions of said A. L. & M. P. Ruffner indorsed thereon, and declined to confirm said report so far as the same allowed taxes and interest thereon to the city of Charleston, and confirmed said report in other respects, with the exception of certain credits admitted to have been paid on said State taxes by A. L. & M. P. Ruffner, and allowed said A. L. & M. P. Ruffner to redeem said lot by the payment of $319.16, the balance of taxes ascertained to be due, and the costs, amounting to $30.65. From this decree the city of Charleston applied for and obtained an appeal to this Court.

The questions for consideration in this case arise upon the exceptions indorsed upon said commissioner's report, said city of Charleston excepting, because it is not allowed all of the taxes assessed thereon for municipal purposes from the year 1875 to 1888, inclusive; and said A. L. & M. P. Ruffner excepting to so much of said report as finds any taxes due the city of Charleston in said proceeding, claiming that, if said city of Charleston is entitled to any taxes on said lot, it can not collect them in said proceeding. The commissioner of school lands for Kanawha county initiated the proceedings by filing his petition against the forfeited lot, and praying that the same may be sold for the benefit of the school fund as required by law, and said A. L. & M. P. Ruffner, the original owners of the forfeited lot, filed their petition to redeem the same under section 14, c. 105, Code.

And the exceptions indorsed on the report of the commissioner in chancery, to whom were referred the inquiries above stated by said city of Charleston, raise the questions as to the terms and conditions upon which said Ruffners should be permitted to redeem said lot. These may be found in sections 13, 14, c. 105, and section 42, c. 31, Code; which chapters, being in *pari materia*, must be read and construed together. Section 39, c. 31, provides, among other things, that when,

for any five successive years since the 9th day of April, 1873, the owner of any tract or lot of land, less in quantity than 1,000 acres, shall not have been charged on such book with State tax on said land, then by operation of law, and without any proceeding therefor, the land shall be forfeited and vested in the State. Section 41 of the same chapter makes provision for a sale of such forfeited land by proceedings in the Circuit Court, and section 42 of said chapter provides how the former owner, by filing his claim in the Circuit Court shall be entitled to receive the excess of the sum for which the land may be sold over the taxes charged and chargeable thereon; and it will be seen that said section 42 is identical with section 13, c. 105, p. 721, Code, and they must be construed to be identical in their meaning. When we seek to ascertain what is meant by the taxes charged and chargeable thereon in section 42, c. 31, Code, which provides for the sale of real estate for taxes, by turning to section 33 of said chapter we find it provided that "the previous owner of any real estate, so sold and purchased for the State, his heirs or assigns, or any person having a right to charge it for a debt, may, within one year from the sale thereof, redeem the same by paying into the state treasury the amount of all State, state school, county, school-district, independent school-district, and other district taxes, and all municipal corporation taxes, with the interest due on each class of taxes, at the time of such purchase," *etc.*

This, then, is what is meant by the taxes charged and chargeable thereon when a party seeks to redeem under chapter 31, and it must be what is meant by the taxes charged and chargeable thereon in section 42 of said chapter, in providing how the former owner may receive the excess for which the land may be sold over the taxes charged and chargeable thereon; and it must be what is intended by the same words in section 13, c. 105, which section uses the same language in providing how the former owner shall be entitled to recover the excess of the sum for which the land may be sold over the taxes charged and chargeable thereon. What, then, is meant in section 14 of said chapter when it provides that, "at any time during the pendency of the proceeding for the sale of any such land as hereinbefore mentioned, such

former owner, or any creditor of such former owner, of such land, having a lien thereon, may file his petition in said Circuit Court as hereinbefore provided, and asking to be allowed to redeem such part or parts of any tract of land so forfeited, or the whole thereof, as he may desire; and, upon such proof being made as would entitle the petitioner to the excess of purchase-money hereinbefore mentioned, such court may allow him to redeem the whole of such tract   *   *   * upon the payment into court, or to the commissioner of school lands, all costs, taxes, and interest due thereon, as provided in this chapter, if he desired to redeem the whole of such tract."

Are we not to understand by "all costs, taxes, and interest due thereon," that the same is meant and intended as by the words charged and chargeable thereon in section 13 c. 105, and sections 33, 42, c. 31, of the Code, to wit, all taxes and interest due thereon, including municipal corporation taxes? If they are to be paid by the party seeking to redeem under chapter 31, why should they not be paid by the party who desires to redeem, under section 14 of chapter 105. Surely the expression, "all costs, taxes, and interest due thereon," as used in said last-named section, would include all the taxes charged and chargeable thereon, and all the different kinds of taxes enumerated in said section 33, c. 31, aforesaid. By section 6, c. 105, it is provided that "the court shall also, by a proper decree, refer the said petition to a commissioner in chancery thereof, with instructions to inquire into and report upon the matters and things therein contained, and such others as the court may think proper to direct, and particularly to inquire and report as to the amount of taxes and interest due and unpaid on each tract, lot, and parcel and part of a tract or lot of land mentioned in the petition," *etc.* Now, under this section, we could not regard the duty of such commissioner as properly complied with by merely ascertaining the amount of state taxes, or state and county taxes due on such lot; because he is required to report the amount of taxes and interest due thereon.

Counsel for A. L. & M. P. Ruffner in their brief seem to treat and regard this as a proceeding on the part of the city of Charleston to recover the taxes due said city on said lot.

This view of the case, however, is not sustained by reference to the record; as it will be seen that the commissioner of school lands instituted the proceeding for the purpose of obtaining a decree for the sale of said lot as forfeited. Said Ruffners then interposed by filing a petition claiming to be the owners in fee-simple of said lot, and pray that they may be allowed to redeem the same as provided for in section 14, c. 105, Warth's Code W. Va.; and said commissioner in chancery, in a note in conclusion of his report, says the city of Charleston, by its attorney, W. S. Laidley, has filed a petition herein asserting its claim to taxes against said land, and claims taxes and interest from the year 1875 to 1888, inclusive. The amount of taxes each year, at a valuation of $1,050.00, at $1.25 per $100.00, is equal to $13.12½. The whole claim asserted is $183.75. The claim, then, asserted by the city of Charleston, is that said Ruffners can not redeem said lot without paying all the taxes due thereon, including those due the city of Charleston, with interest thereon as required by statute. It is true, as stated by counsel for A. L. & M. P. Ruffner in their brief, that section 36, c. 47, Code, provides that there shall be a lien on real estate within such city or town, for the city or town taxes assessed thereon, which shall have priority over all other liens except the lien for taxes due the state, county, and district, which may be enforced in the same manner now prescribed by law for the enforcement of the lien for county taxes. Said ¦section also provides for returning any real estate within said city, town, or village delinquent for the non-payment of taxes thereon, and the manner in which it may be sold for the non-payment of said taxes; and it is clear, from the provisions of the statute, that unless the said city had returned said lot delinquent for the non-payment of taxes thereon, and certified a copy of its delinquent list to the auditor, said lot could not be sold under section 36 of chapter 47 for the taxes, interest, and commissions thereon.

But said city of Charleston is not seeking to sell said lot for the non-payment of taxes in this proceeding. It is only claiming that A. L. & M. P. Ruffner can not redeem said lot without paying the taxes due said city thereon, with the interest allowed by statute; and I can arrive at no other con-

clusion, from an examination of the statutes in reference thereto, than that section 14, c. 105, Code, when it says the former owner may redeem such lot upon the payment into court, or to the commissioner of school lands, of "all costs, taxes, and interests due thereon," intended to include the taxes of the city, if the lot was located therein, and any taxes were due thereon. They certainly would be included by the words "all taxes due thereon." Counsel for city seemed to entertain some fears in regard to the jurisdiction of this Court in this case, under the rulings in the case of *McClure* v. *Maitland*, 24 W. Va. 561. That decision, however, was rendered in reference to a proceeding under chapter 134 of the Acts of 1872–73; and at that time there was no provision in the statute requiring a summons to issue against the claimants, if any, named in the petition, and all unknown parties having or claiming the land, or any part of them, as is required by the present statute; but in this proceeding the city of Charleston is made a party by petition, and by excepting to the commissioner's report, and I can see no reason for declining to entertain the appeal on that ground.

It is assigned as error by the appellant that said commissioner applied the limitation of five years to the claim for taxes asserted before him by said city of Charleston. Now, it will be perceived that said city of Charleston has brought no suit of any character under section 28, c. 39, Acts 1875, which contains the charter of said city of Charleston to enforce its lien for taxes against said lot; neither has it brought a suit, whether appropriate or inappropriate, of any other character, to enforce said lien; but in response to the petition of said A. L. & M. P. Ruffner, praying leave to redeem said lot under section 14, c. 105, Warth's Code, said city claims that the payment of all the taxes due upon said lot is a condition precedent to the right of said Ruffners to redeem said lot, which must be complied with before they can redeem the same; and it appears to us that it is immaterial what becomes of said municipal taxes after they are paid into court, or to the commissioner of school lands; but all costs, taxes, and interest due thereon must be so paid, or no redemption can be legally obtained, so far as the interest is concerned. Sec. 13, c. 105, and section 42, c. 31, of the Code, both fix the rate at 12 per cent.

For these reasons we are of opinion that the decree of the Circuit Court should be reversed, and the cause remanded to the Circuit Court of Kanawha county for further proceedings to be had therein in accordance with the principles herein announced, and said A. L. & M. P. Ruffner must pay the costs of this appeal.

REVERSED.   REMANDED.